UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PITTSBURGH LOGISTICS
SYSTEMS, INC.,
a Pennsylvania Corporation,

      Plaintiff,

vs.                                                                      Case No.:


FREIGHT TEC MANAGEMENT GROUP, INC.,
d/b/a FREIGHT TEC,
a Utah Corporation,

      Defendant.

_____/


## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Pittsburgh Logistics Systems, Inc., by and through its undersigned counsel, sues Defendant, Freight Tec Management Group, Inc. d/b/a Freight Tec, and states as follows:

### JURISDICTION AND VENUE

1.     This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00).

2.     Plaintiff, Pittsburgh Logistics Systems, Inc. (hereinafter "PLS"), is a corporation organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business in Cranberry Township, Pennsylvania.

3.     Defendant, Freight Tec Management Group, Inc. ("FTMG"), is a Utah corporation with a principal place of business in Bountiful, Utah. FTMG does business as Freight Tec.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties are citizens of different states and the amount in controversy exceeds $75,000.00.

5. This Court has personal jurisdiction over FTMG for the following reasons:

    a. FTMG is operating, conducting, engaging in, or carrying on a business or business venture in this state due to its agency relationship with Isaac Spragg, a Tampa, Florida resident, and Spragg Enterprises, LLC, a Florida limited liability company with its principal place of business located in Tampa, Florida.

    b. FTMG has committed the tortious acts alleged herein within the state of Florida.

    c. FTMG is engaged in substantial and not isolated activity within the state of Florida.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the Middle District of Florida.

## GENERAL ALLEGATIONS

7. PLS is in the business of providing transportation management, freight brokerage, and other third-party logistics services (hereinafter "3PL services") to customers located throughout the United States.

8. As a part of its business, PLS identifies and then develops and cultivates relationships with customers who need 3PL services and carriers who provide the transportation portion of 3PL services. PLS employees conduct research to identify the persons who are

2

responsible for securing the 3PL services for a customer, learn about the types of loads that the customer generates, the lanes on which the customer sends its loads, and the customer's pricing expectations. Likewise, PLS employees identify contacts with carriers, learn about the types of loads that each carrier is capable of carrying, the lanes that each carrier frequents, and the carrier's payment expectations with respect to different types of loads and lanes.

9. PLS provides its employees with extensive training, state-of-the-art equipment and facilities, paid access to various subscription services, and a host of proprietary business methods, procedures and information that have been confidentially developed over the course of many years at great cost that PLS considers to be, and treats as, trade secrets. These trade secrets also include information concerning customers and prospective customers, contact information, historical and current shipping rate and pricing information, shipping route or lane information and information concerning carriers. PLS's trade secrets are not known outside of PLS, are treated as confidential within PLS, and provide PLS with a competitive advantage over competitors and potential competitors.

10. PLS has established a well-regarded and strategic employment model to recruit and train talented employees to provide its customers with the best service at efficient prices.

11. Accordingly, PLS identifies talented and educated individuals who have limited to no experience in the logistics field and then provides them with extensive education and hands on training, which can last from six months to a year.

12. This business model of identifying and training logistics professionals is predicated on the retention of these employees in which PLS extensively invested time and money.

13. Pursuant to this business strategy, PLS has its employees execute an Employment Agreement substantially similar to the one attached hereto as **Exhibit A**.

14. Included within the Employment Agreement is a Confidentiality Clause which prohibits an employee from disclosing confidential information of PLS, including, but not limited to: information and knowledge pertaining to products, trade secrets, proprietary information, advertising, distribution and sales methods, sales and profit figures, customers and client lists and relationships between PLS and sales representatives, customers, clients, suppliers and others who have business dealings with, and as further stated in relevant part as follows:

> Confidentiality. During the term of my employment with the Company and thereafter, I shall not, directly or indirectly, divulge, furnish or make accessible to any other person, business, firm or corporation, or use in any way other than in the ordinary course or for the benefit of the business of the Company any Confidential Information, as defined herein, of the Company which I acquired or become acquainted with or will acquire or become acquainted with as a result of my employment with the Company…The Confidential Information is the property of the Company and I acknowledge that the use, misappropriation or disclosure of the Confidential Information would constitute a breach of trust, fiduciary duty and could cause irreparable injury to the Company…"

(Exhibit A, Section 4).

15. Also included within the Employment Agreement is a Non-Solicitation Clause, as further stated in relevant part as follows:

> Non-Solicitation. I agree not to directly or indirectly solicit, for the purpose of offering or attempting to offer any service, product or other application which is the same as or similar to the services, products or other applications offered by the Company or in the process of being developed by the Company within the last year prior to termination of my employment with the Company, any of the Company's customers for a period of two (2) years after termination of my employment with the Company. I further agree, for a period of two (2) years after the termination of my employment with the Company, that I will not directly or indirectly hire or directly or indirectly solicit or attempt to solicit any employee of, or consultant to, the Company, which employee or consultant had been rendering services to the Company at anytime within the six month period

immediately preceding the termination of my employment, to leave the employ of, or no longer render service to or for the benefit of, the Company.

(Exhibit A, Section 7).

16. Also included within the Employment Agreement is a Non-Competition Clause, as further stated in relevant part as follows:

Non-Competition. During the term of my employment with the Company and for a period of one (1) year thereafter, I shall not become an officer or director of, or consultant to or be employed by, or otherwise render services to or on behalf of, a Competing Business. For purposes of this Agreement, the term "Competing Business" shall mean: any person, corporation, partnership, joint venture, association or other entity engaged in the business of: (a) providing transportation management, including outsourced transportation, freight brokerage or logistics services, whether internet based or otherwise, and other such business entities as Company may acquire or create…(e) offering or attempting to offer any service, product or other application which is the same as or similar to the services, products or other applications offered or in the process of being developed by the Company within the last year prior to termination of my employment with the Company…

(Exhibit A, Section 8).

17. FTMG is a direct competitor of PLS in the logistics field and operates throughout the country, including in Florida. FTMG employs a decidedly different business model from PLS. Rather than develop its own talent, FTMG poaches employees from other companies.

18. FTMG's modus operandi is to pillage trained employees who possess the requisite skills, and typically are bound by employment agreements like PLS's, as a backdoor means to obtaining competitors' trade secrets and customers. For example, FTMG's website prominently touts its "Agent Program" in which it seeks to entice experienced freight agents or logistics professionals with an existing book of business to become FTMG agents. *See* https://freight-tec.com/agent-program/

19. On or about January 5, 2013, PLS hired Isaac Spragg as an employee. An

5

Employment Agreement was signed between PLS and Mr. Spragg on or about the same date, a copy of which is attached hereto as **Exhibit A**.

20. The Employment Agreement signed between PLS and Mr. Spragg specifically included the Confidentiality, Non-Solicitation, and Non-Competition clauses mentioned above.

21. Mr. Spragg was relatively untrained at the time of his hiring and PLS expended great expense and cost in his training.

22. Mr. Spragg thereafter developed into a valuable employee through PLS's extensive training.

23. PLS provided Mr. Spragg with confidential business information, including trade secrets related to customer information, carrier contacts and information, customer lists, methodologies, prices, and rates; and he was introduced and developed relationships with numerous PLS customers and carriers pursuant to his employment.

24. Additionally, Mr. Spragg initiated and obtained additional customers and carriers for PLS within the course and scope of his employment which were protected by the Confidentiality Clause of his contract, among other clauses.

25. Sometime around January 2014, Mr. Spragg relocated to PLS's Tampa, Florida satellite office.

26. Based upon information and belief, sometime after January 2014, FTMG solicited Mr. Spragg while he was an employee of PLS to leave PLS and become an agent of FTMG.

27. Based upon information and belief, FTMG also induced Mr. Spragg to divulge confidential information regarding the trade secrets, identity, contact information, and other business-related material related to PLS's customer base; as well as inducing him to recruit other

PLS employees to leave PLS and become an agent of FTMG.

28. FTMG knew or should have known about Mr. Spragg's contractual relationship with PLS, which included the provisions regarding Confidentiality, Non-Solicitation and Non-Competition.

29. Mr. Spragg subsequently left PLS, and on or about June 14, 2016 he formed Spragg Enterprises LLC, a Florida limited liability located in Tampa, and became an agent of FTMG.

30. Mr. Spragg has since operated as an agent or employee of FTMG either in his individual capacity or by and through Spragg Enterprises LLC.

31. Even after successfully poaching Mr. Spragg, FTMG continued to solicit PLS employees. For example, January 5, 2017, FTMG sent a recruitment email to multiple PLS employees, which stated in relevant part as follows:

> I am contacting you to let you know about Freight Tec. We are an agent based company in business for over 20 years. We focus solely on our agents as we have no in house brokerage. You don't have to worry about competing with our customers because you are our customer. We offer generous splits, quick pays, great software and the most amazing ability to approve your customers and carriers right from our website and it is all mobile friendly! We are not over crowded so you have less to worry with agent competition.
>
> We are looking for good DOD agents right now. We have free loadboards, auto posting, and many more exciting features I can tell you about. If you have time to talk soon, please let me know. Thanks and have a great day!

32. All conditions precedent to this action have been satisfied or waived.

## COUNT I
### Tortious Interference with Contractual and Business Relationships

33. Plaintiff realleges paragraphs 1 through 32.

34. PLS entered into a contract with Isaac Spragg as stated above, which includes the

aforesaid Confidentiality, Non-Solicitation, and Non-Competition clauses.

35.  In addition, at all times material, PLS has had contractual and business relationships with the customers and carriers that dealt with Isaac Spragg while he was a PLS employee.

36.  Defendant FTMG knew of the business and contractual relationships referenced in the preceding paragraph.

37.  Defendant FTMG knowingly and intentionally interfered with the relationships. Defendant's interference was intentional and unjustified.

38.  As a direct and proximate result, Plaintiff has suffered damages, including special damages such as damage to business reputation, disruption of business, lost revenues and profits, and incidental and consequential damages.

39.  As a further direct and proximate result of FTMG's tortious interference with PLS's contractual relationship with Isaac Spragg, PLS was forced into litigation to protect the legitimate interests embodied in its employee restrictive covenants. PLS retained counsel and is obligated to pay them reasonable fees and costs. Those fees and costs would not have been incurred but for FTMG's wrongful acts and therefore are recoverable from FTMG as additional special damages pursuant to the wrongful act doctrine.

WHEREFORE, Plaintiff demands judgment against Defendant for damages, including special damages, plus interest, costs and attorneys' fees and further relief, at law or in equity that the Court deems just and proper.

## COUNT II
**Misappropriation of Trade Secrets**

40.  Plaintiff realleges paragraphs 1 through 32.

41. During the course of his employment relationship with PLS, Isaac Spragg was exposed to, and possessed, information from PLS that derives independent economic value, actual or potential, from not being generally known to, or readily ascertainable by proper means by, persons who can obtain economic value from its disclosure or use. The trade secrets include, but are not limited to, customer lists and contact information, carrier lists and contact information, prices, rates, and other methods and techniques.

42. PLS made efforts that were reasonable under the circumstances to maintain the secrecy of its trade secrets.

43. Isaac Spragg revealed trade secrets to FTMG. FTMG knows the trade secrets in its possession belong to PLS and FTMG's continued possession, use and/or disclosure of such materials constitutes misappropriation.

44. Plaintiff has been, and will continue to be, harmed until and unless its trade secrets are returned and/or Defendant stops using them.

45. Defendant's misappropriation is willful and malicious.

WHEREFORE, Plaintiff demands judgment against Defendant for damages, together with interest, costs and attorneys' fees, and such other and further relief, at law or in equity, which this Court deems just and proper.

## COUNT III
### Unjust Enrichment

46. Plaintiff realleges paragraphs 1 through 32.

47. Plaintiff conferred a benefit on Defendant as a result of Defendant's soliciting and hiring or contracting with Isaac Spragg. The benefits include but are not limited to PLS's confidential information regarding the identity, contact information, and other business-related

material related to PLS' customers and carriers, prices, rates, and other methods and techniques.

48. Defendant has knowledge of the benefit conferred and accepted and retained the benefit.

49. The circumstances are such that Defendant should, in all fairness, be required to pay for the benefit.

WHEREFORE, Plaintiff demands judgment against Defendant for damages, together with interest, costs, and such other and further relief, at law or in equity, which this Court deems just and proper.

### Demand for Jury Trial

Plaintiff, PLS demands a trial by jury of all issues so triable.

/s/ William J. Cook
William J. Cook, Esquire
Florida Bar No. 986194
Trial Counsel
Barker & Cook, P.A.
501 East Kennedy Boulevard, Suite 1040
Tampa, Florida 33602
Telephone:   813/489-1001
Facsimile:   813/489-1008
wcook@barkercook.com
Attorney for Plaintiff
Pittsburgh Logistics Systems, Inc.